UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
CASE No. 5:13-cv-00092-RLV-DSC

U.S. COMMODITY FUTURES
TRADING COMMISSION,

Plaintiff,

v.

CARL DAVID WRIGHT,

Defendant.

ORDER

FILED
STATESVILLE, N.C.
OCT 28 2013
U.S. District Court
Western District of N.C.

ORDER OF PERMANENT INJUNCTION AND
OTHER EQUITABLE RELIEF AGAINST
DEFENDANT CARL DAVID WRIGHT

On June 24, 2013, Plaintiff Commodity Futures Trading Commission ("CFTC" or "Commission") filed a Complaint for Injunctive and Other Equitable Relief and Penalties Under the Commodity Exchange Act ("Complaint") against Defendant Carl David Wright ("Wright") seeking injunctive and other equitable relief for violations of the Commodity Exchange Act (the "Act"), 7 U.S.C. §§1 et seq. (Supp. IV 2011) and the Commission Regulations ("Regulations") promulgated thereunder, 17 C.F.R. §§ 1.1 et seq. (2012). Specifically, the CFTC's Complaint alleged that Defendant has violated Sections 4b(a)(1)(A) and (C) of the Act, 7 U.S.C. §§ 6b(a)(1)(A), (C) (Supp. II 2009), Sections 4m(1) and 4o(1)(A) and (B) of the Act, 7 U.S.C. §§ 6m and 6o(1)(A), (B) (2006), and Commission Regulation ("Regulation") 4.20, 17 C.F.R. § 4.20 (2012).

## I. CONSENTS AND AGREEMENTS

To effect partial settlement of the matters alleged in the Complaint against Wright without a trial on the merits or any further judicial proceedings, Wright:

1. Consents to the entry of this Consent Order for Permanent Injunction and Other Equitable Relief Against Defendant David Carl Wright ("Consent Order");

2. Affirms that he has read and agreed to this Consent Order voluntarily, and that no promise, other than as specifically contained herein, or threat, has been made by the Commission or any member, officer, agent or representative thereof, or by any other person, to induce consent to this Consent Order;

3. Acknowledges service of the summons and Complaint;

4. Admits the jurisdiction of this Court over him and the subject matter of this action pursuant to Section 6c of the Act, as amended, 7 U.S.C. § 13a-1;

5. Admits the jurisdiction of the Commission over the conduct and transactions at issue in this action pursuant to the Act, 7 U.S.C. §§ 1, *et seq.*;

6. Admit that venue properly lies with this Court pursuant to Section 6c(e) of the Act, as amended, 7 U.S.C. § 13a-1(e);

7. Waives:

   a. any and all claims that he may possess under the Equal Access to Justice Act, 5 U.S.C. § 504 (2006) and 28 U.S.C. § 2412 (2006), and/or the rules promulgated by the Commission in conformity therewith, Part 148 of the Regulations, 17 C.F.R. §§ 148.1 *et seq.* (2012), relating to, or arising from, this action;

b. any and all claims that he may possess under the Small Business Regulatory Enforcement Fairness Act of 1996, Pub. L. No. 104-121, §§ 201-253, 110 Stat. 847, 857-868 (1996), as amended by Pub. L. No. 110-28, § 8302, 121 Stat. 112, 204-205 (2007), relating to, or arising from, this action;

c. any claim of Double Jeopardy based upon the institution of this action or the entry in this action of any order imposing a civil monetary penalty or any other relief, including this Consent Order; and

d. any and all rights of appeal from this action;

8. Consents to the continued jurisdiction of this Court over him for the purpose of implementing and carrying out the terms and conditions of all orders and decrees, including orders setting the appropriate amounts of restitution, disgorgement and civil monetary penalty, that may be entered herein, to entertain any suitable application or motion for additional relief within the jurisdiction of the Court, to assure compliance with this Consent Order and for any other purpose relevant to this action, even if Wright now or in the future resides outside the jurisdiction of this Court;

9. Agrees that he will not oppose enforcement of this Consent Order by alleging that it fails to comply with Rule 65(d) of the Federal Rules of Civil Procedure and waives any objection based thereon;

10. Agrees that neither Wright, nor any agents or employees under his authority or control, shall take any action or make any public statement denying, directly or indirectly, any allegation in the Complaint or Conclusions of Law in this Consent Order, or creating or tending to create the impression that the Complaint and/or this Consent Order is without a factual basis; provided, however, that nothing in this provision shall affect his: (a) testimonial obligations; or

(b) right to take legal positions in other proceedings to which the Commission is not a party. Wright shall undertake all steps necessary to ensure that all of his agents and/or employees under his authority or control understand and comply with this agreement;

11. Admits to all of the findings made in this Consent Order and all of the allegations in the Complaint. Further, Wright agrees and intends that the allegations contained in the Complaint and all of the Findings of Fact and Conclusions of Law contained in this Consent Order shall be taken as true and correct and be given preclusive effect, without further proof, in the course of: (a) any current or subsequent bankruptcy proceeding filed by, on behalf of, or against Wright; (b) any proceeding pursuant to Section 8a of the Act, as amended, 7 U.S.C. § 12a, and/or Part 3 of the Regulations, 17 C.F.R. §§ 3.1 *et seq.* (2012); and/or (c) any proceeding to enforce the terms of this Consent Order;

12. Agrees to provide immediate notice to this Court and the Commission by certified mail, in the manner required by paragraph 40 of Part IV of this Consent Order, of any bankruptcy proceeding filed by, on behalf of, or against Wright, whether inside or outside the United States; and

13. Agrees that no provision of this Consent Order shall in any way limit or impair the ability of any other person or entity to seek any legal or equitable remedy against him in any other proceeding.

14. Wright consents to pay restitution, plus post-judgment interest, in an amount to be determined upon subsequent consent order or motion by the CFTC and/or hearing before this Court.

15. Wright consents to pay a civil monetary penalty, plus post-judgment interest, in an amount to be determined upon subsequent consent order or motion by the CFTC and/or hearing before this Court.

16. The Court, being fully advised in the premises, finds there is good cause for entry of this Consent Order and that there is no just reason for delay. The Court therefore directs the entry of Findings of Fact, Conclusions of Law and a permanent injunction and ancillary equitable relief pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1, as set forth herein.

## II. FINDINGS OF FACT

17. In early 2008, Wright, who is a teacher and is also the owner of a painting business, opened a futures trading account in his own name with a futures commission merchant ("FCM") registered with the Commission. In his account application, Wright stated that his investment objective was to speculate and that no other person would have an interest in the account.

18. Beginning in or about August 2008, Wright began to solicit funds from friends and acquaintances. He told some individuals that the funds were loans for his painting business or that the funds would be used to purchase gas stations. He told other individuals that their funds would be used to trade commodities.

19. Wright provided at least some of these individuals with documents entitled "Special Renewable Note Agreement" ("Notes"). At least some of these Notes stated that the funds provided would be invested in "crude oil futures," "grain futures," or "currency futures." These agreements confirmed the amount received from the participant and also specified that the participant would receive a specific repayment, which included a profit at a stated rate of interest varying between 10 and 30 percent. Most of these Notes had terms of no more than 2-6 months.

20. Wright told at least some of the participants that he was the managing partner of a commodity pool and that he would send their funds to be traded by a firm called "Commodity Investment Group." Some of the Notes Wright provided to participants appeared to be printed on "Commodity Investment Group" letterhead, but, in fact, Wright designed and printed those documents on his home computer. Wright signed the Notes as the "Managing Partner" of the Commodity Investment Group.

21. Regardless of what Wright told these individuals, he instructed all participants to make their checks payable to him personally and then deposited those funds into his personal banking account.

22. Wright did not transfer any funds to a firm named "Commodity Investment Group" and Wright is not the managing partner of any such firm.

23. Wright received at least $1 million in participant funds, of which he wired approximately $200,000 into his futures trading account. Wright did not, in fact, use most of those funds to trade commodity futures. Instead, Wright transferred approximately $147,000 back out of his futures trading account to his bank account, often after holding the funds in the account for only a short period of time. Wright lost approximately $60,000 in trading activities.

24. Wright used the remaining funds to pay back Pool participants in a manner of a Ponzi scheme and to pay his own personal expenses.

25. Wright's statements to Pool participants were false because he knew that he was not trading the vast majority of the funds that he received, he knew that there was no firm called "Commodity Investment Group" to which he was transferring funds, he knew that he could not meet the terms of the promissory notes through legitimate investments, and he knew that he was

misappropriating the majority of the funds he received to pay supposed returns to participants and to support his lifestyle.

26. Wright used the United States Postal Service, or other private or commercial carrier, to receive and make at least some of the payments to Pool participants.

27. On March 22, 2013, Wright was served with a search warrant by the United States Postal Inspector and the North Carolina Bureau of Investigation. At that time, Wright gave an informal statement in which he admitted, among other things, that he had solicited funds from friends and acquaintances, telling at least some of them that their investments would be used to trade commodities futures contracts, but that he had not used most of the funds to trade commodities futures, instead using the funds to pay supposed returns to his investors. Wright also admitted that he created the promissory Notes that he provided to some investors on his home computer and he claimed that no one else knew that the investments were fraudulent.

### III. CONCLUSIONS OF LAW

The Court, being fully advised in the premises, finds that there is good cause for the entry of this Consent Order and that there is no just reason for delay. The Court therefore directs the entry of the following Conclusions of Law, permanent injunction and equitable relief pursuant to Section 6c of the Act, as amended, 7 U.S.C. § 13a-1, as set forth herein.

**THE COURT HEREBY FINDS:**

    **A. Jurisdiction and Venue**

28. This Court has jurisdiction over the parties and subject matter of this action pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1(a), which authorizes the CFTC to seek injunctive relief in a district court whenever it appears to the CFTC that a person or entity has

engaged, is engaging, or is about to engage in any act or practice that constitutes a violation of any provision of the Act or any rule, regulation, or order promulgated thereunder.

29. Venue properly lies with this Court pursuant to Section 6c(e) of the Act, 7 U.S.C. § 13a-1(e), because defendant Wright transacted business in this District, and the acts and practices in violation of the Act have occurred, are occurring, or are about to occur within this District.

### B. Violations of Section 4b(a)(1)(A) and (C) of the Act: Fraud by Misappropriation, Misrepresentation and Omission

30. Defendant Wright, in connection with an order to make, or the making of, any contract of sale of any commodity in interstate commerce or for future delivery that is made, or to be made, on or subject to the rules of a designated contract market, for or on behalf of any other person has cheated, defrauded or deceived, and/or attempted to cheat, defraud or deceive, pool participants and prospective participants by, among other things, (a) misappropriating funds invested by Pool participants; (b) providing participants with Notes that promised a fixed return of 10-30%; (c) making material misrepresentations including, but not limited to, telling Pool participants that their funds would be used for commodities futures trading, when he knew that most of their funds would in fact be misappropriated; and (d) failing to disclose that he was not registered with the Commission, all in violation of Section 4b(a)(1)(A) and (C) of the Act, 7 U.S.C. § 6b(a)(1)(A), (C) (Supp. II 2009).

31. Wright engaged in the acts and practices described above knowingly or with reckless disregard for the truth.

### C. Violation of Section 4*o*(1) of the Act: Fraud by a CPO

32. Wright acted as a commodity pool operator ("CPO") by soliciting, accepting, or receiving funds from others while engaged in a business that is of the nature of an investment

trust, syndicate, or similar form of enterprise, for the purpose of, among other things, trading in futures.

33. Wright violated Section 4*o*(1) of the Act, 7 U.S.C. § 6*o*(1) (2006), in that he employed a device, scheme or artifice to defraud Pool participants and prospective Pool participants and/or engaged in transactions, practices or a course of business which operated or operates as a fraud or deceit upon Pool participants or prospective Pool participants. These fraudulent acts include (a) misappropriating funds invested by Pool participants; (b) providing participants with Notes that promised a fixed return of 10-30%; (c) making material misrepresentations including, but not limited to, telling Pool participants that their funds would be used for commodities futures trading, when he knew that most of their funds would in fact be misappropriated; and (d) failing to disclose that he was not registered with the Commission.

34. In the course of these fraudulent acts, Wright used the mails or other instrumentalities of interstate commerce including (a) using the United States Postal Service or other private or commercial interstate carrier to send payments to Pool participants, and (b) wiring funds to and from his commodity futures trading account.

35. Wright engaged in the acts and practices described above knowingly or with reckless disregard for the truth.

    **D. Violation of Section 4m(1) of the Act: Acting as a CPO without Registration**

36. Wright has used the mail or instrumentalities of interstate commerce in or in connection with a commodity pool as a CPO while failing to register as a CPO, in violation of Section 4m(1) of the Act, 7 U.S.C. § 6m(1) (2006).

    **E. Violation of Commission Regulation 4.20: Failure to Operate the Pool as a Separate Legal Entity, Accepting Funds in His Own Name, and Commingling of Pool Funds**

9

37. Wright violated Regulation 4.20(a)-(b), 17 C.F.R. § 4.20(a)-(b) (2012), in that while acting as a CPO, he failed to operate the Pool as a legal entity separate from that of the CPO and accepted monies from Pool participants for the purchase of interests in the Pool in his own name.

38. Wright also violated Regulation 4.20(c), 17 C.F.R. § 4.20(c) (2012), in that while acting as a CPO, he commingled funds he received from Pool participants by depositing such funds into his personal bank account containing his personal funds as well as funds of others received by him.

## IV. PERMANENT INJUNCTION

**IT IS HEREBY ORDERED THAT:**

39. Based upon and in connection with the foregoing conduct, pursuant to Section 6c of the Act, as amended, 7 U.S.C. § 13a-1, defendant Wright is permanently restrained, enjoined and prohibited from directly or indirectly engaging in conduct in violation of Sections 4b(a)(1)(A) and (C) of the Act, 7 U.S.C. §§ 6b(a)(1)(A), (C) (Supp. II 2009), Sections 4m(1) and 4o(1)(A) and (B) of the Act, 7 U.S.C. §§ 6m and 6o(1)(A), (B) (2006), and Regulation 4.20, 17 C.F.R. § 4.20 (2012).

40. Defendant Wright is also permanently restrained, enjoined and prohibited from directly or indirectly:

>   a. Trading on or subject to the rules of any registered entity (as that term is defined in Section 1a of the Act, as amended, 7 U.S.C. § 1a) for or on behalf of any other person or entity, whether by power of attorney or otherwise, in any account involving commodity futures, options on commodity futures, commodity options, security futures products, swaps, and/or forex contracts;
>
>   b. Entering into any transactions involving commodity futures, options on commodity futures, commodity options (as that term is defined in

Regulation 1.3 (hh), 17 C.F.R. § 1.3(hh) (2012)) ("commodity options"), security futures products, swaps (as that term is defined in Section 1a(47) of the Act, as amended, and as further defined by Commission regulation 1.3(xxx), 17 C.F.R. § 1.3(xxx)), and/or foreign currency (as described in Sections 2(c)(2)(B) and 2(c)(2)(C)(i) of the Act, as amended, 7 U.S.C. §§ 2(c)(2)(B) and 2(c)(2)(C)(i)) ("forex contracts") for or on behalf of any other person or entity, whether by power of attorney or otherwise, in any account involving commodity futures, options on commodity futures, commodity options, security futures products, swaps, and/or forex contracts;

c. Controlling or directing the trading for or on behalf of any other person or entity, whether by power of attorney or otherwise, in any account involving commodity futures, options on commodity futures, commodity options, security futures products, swaps, and/or forex contracts;

d. Soliciting, receiving, or accepting any funds from any person for the purpose of purchasing or selling any commodity futures, options on commodity futures, commodity options, security futures products, swaps, and/or forex contracts;

e. Applying for registration or claiming exemption from registration with the Commission in any capacity, and engaging in any activity requiring such registration or exemption from registration with the Commission, except as provided for in Commission Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9) (2012); and

f. Acting as a principal (as that term is defined in Regulation 3.1(a), 17 C.F.R. § 3.1(a) (2012)), agent or any other officer or employee of any person (as that term is defined in Section 1a of the Act, as amended, 7 U.S.C. § 1a) registered, exempted from registration or required to be registered with the Commission, except as provided for in Commission Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9) (2012).

## V. RESTITUTION AND CIVIL MONETARY PENALTY

41. Defendant Wright shall pay restitution plus post-judgment interest, to each defrauded Participant.

42. Defendant Wright shall pay a civil monetary penalty plus post-judgment interest, to the CFTC.

43. The Court shall determine the amounts of restitution and civil monetary penalty and the procedures for payment and distribution of these monetary sanctions by further order upon: motion of the parties submitting to the Court a proposed consent order setting out their agreement on the amounts of restitution and civil monetary penalty to be paid by Wright in this matter, subsequent motion by the CFTC, and/or hearing before this court.

44. In connection with any Commission motion for restitution and/or civil monetary penalties, and at any hearing held on such a motion: (a) Wright will be precluded from arguing that he did not violate the federal laws as alleged in the Complaint; (b) Wright may not challenge the validity of his consents and agreements herein or this Consent Order; (c) solely for the purposes of such motion, the allegations of the Complaint and the Findings of Fact and Conclusions of Law in this Consent Order shall be accepted as and deemed true by the Court; and (d) the Court may determine the issues raised in the motion on the basis of affidavits, declarations, excerpts of sworn deposition or investigative testimony, and documentary evidence, without regard to the standards for summary judgment contained in Rule 56(c) of the Federal Rules of Civil Procedure. In connection with the Commission's motion for restitution and/or civil monetary penalties, the parties may take discovery, including discovery from appropriate non-parties.

45. Wright shall cooperate fully and expeditiously with the CFTC, including the CFTC's Division of Enforcement, in any current or future investigation, civil litigation or administrative matter related to the subject matter of this action. As part of such cooperation, Wright shall comply, to the full extent of his abilities, promptly and truthfully with any inquiries or requests for information including but not limited to, requests for production of documents and authentication of documents, shall provide assistance at any trial, proceeding, or

investigation related to the subject matter of this action, including but not limited to, requests for testimony, depositions, and/or interviews. Should the CFTC file any additional action(s) related to the subject matter of this action, Wright is directed to appear in the judicial district in which such action(s) is pending, or in a suitable judicial district agreed to by the parties, to provide deposition testimony and trial testimony should such testimony be necessary

## VI. MISCELLANEOUS PROVISIONS

46. Notice: All notices required to be given by an provisions in this Consent Order shall be sent certified mail, return receipt requested as follows:

Notice to Commission:

> Regional Counsel, Division of Enforcement
> U.S. Commodity Futures Trading Commission
> 525 West Monroe Street, Suite 1100
> Chicago, Illinois 60661

Notice to Defendant:

> Carl David Wright
> 3062 Highway 73
> Iron Station, NC 28080

All such notices to the Commission shall reference the name and docket number of this action.

47. Change of Address/Phone: Until such time as Wright satisfies in full his Restitution Obligation and CMP Obligation as set forth in this Consent Order, Wright shall provide written notice to the Commission by certified mail of any change to his telephone number and mailing address within ten (10) calendar days of the change.

48. Entire Agreement and Amendments: This Consent Order incorporates all of the terms and conditions of the settlement among the parties hereto to date. Nothing shall serve to amend or modify this Consent Order in any respect whatsoever, unless: (a) reduced to writing; (b) signed by all parties hereto; and (c) approved by order of this Court.

13

49. Invalidation: If any provision of this Consent Order or if the application of any provision or circumstance is held invalid, then the remainder of this Consent Order and the application of the provision to any other person or circumstance shall not be affected by the holding.

50. Waiver: The failure of any party to this Consent Order or of any participant at any time to require performance of any provision of this Consent Order shall in no manner affect the right of the party or participant at a later time to enforce the same or any other provision of this Consent Order. No waiver in one or more instances of the breach of any provision contained in this Consent Order shall be deemed to be or construed as a further or continuing waiver of such breach or waiver of the breach of any other provision of this Consent Order.

51. Continuing Jurisdiction of this Court: This Court shall retain jurisdiction of the action to ensure compliance with this Consent Order and for all other purposes related to this action, including any motion by Defendant to modify or for relief from the terms of this Consent Order.

52. Injunctive and Equitable Relief Provisions: The injunctive and equitable relief provisions of this Consent Order shall be binding upon defendant Wright, upon any person under his authority or control, and upon any person who receives actual notice of this Consent Order, by personal service, e-mail, facsimile or otherwise insofar as he or she is acting in active concert or participation with defendant.

53. Counterparts and Facsimile Execution: This Consent Order may be executed in two or more counterparts, all of which shall be considered one and the same agreement and shall become effective when one or more counterparts have been signed by each of the parties hereto and delivered (by facsimile, e-mail, or otherwise) to the other party, it being understood that all

parties need not sign the same counterpart. Any counterpart or other signature to this Consent Order that is delivered by any means shall be deemed for all purposes as constituting good and valid execution and delivery by such party of this Consent Order.

54. Defendant understands that the terms of the Consent Order are enforceable through contempt proceedings, and that, in any such proceedings he may not challenge the validity of this Consent Order.

**IT IS SO ORDERED.**

Signed: October 28, 2013

*[Signature]*

Richard L. Voorhees
United States District Judge