IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
CIVIL ACTION NO. 5:13-CV-92

| U.S. COMMODITY FUTURES TRADING COMMISSION, | ) ) ) | |
|---|---|---|
| **Plaintiff,** | ) ) ) | |
| v. | ) ) | **MEMORANDUM** |
| CARL DAVID WRIGHT, | ) ) ) | |
| **Defendant.** | ) ) ) | |

**BEFORE THE COURT** is the U.S. Commodity Futures Trading Commission's ("CFTC") Motion for Entry of Civil Monetary Penalty. (Doc. 7). The Consent Order in this case establishes that Wright has committed various violations of the Commodity Exchange Act, 7 U.S.C. § 1 *et seq* (the "Act") and the CFTC's Regulations promulgated thereunder, 17 C.F.R. § 1.1. *et seq*. On May 12, 2015, this Court entered an Order which specified in detail the procedural posture of this case. (Doc. 9). The Order reopened the case and directed the parties to submit supplemental briefing addressing the amount of the civil penalty. The Order specified the manner in which the parties were to submit their briefs. Defendant has not responded in accordance with the briefing requirement set out by the Order, even though the Order specified that "**[f]ailure to appropriately respond to the CFTC's brief may prejudice your ability to contest a $1,000,000.00 civil penalty.**" (*Id.* at 3). This matter is ripe for ruling.

The parties' Consent Order, which the Court adopted, establishes that Defendant received "at least $1 million in participant funds." (Doc. 6, at ¶ 23). The CFTC may assess a person a civil penalty of an amount not more than equal to the greater of $140,000 or triple the monetary gain to

1

such person for each such violation. The Court has jurisdiction to enter said civil penalty. 7 U.S.C. 13a-1(d)(1)(A).

Ms. Spear, an employee of the CFTC, participated in the investigation of Defendant and the commodity pool he operated. (Dec. of Mary Spear, Doc. 10-1, at ¶ 1). She affirms that Wright solicited and accepted at least $1 million from nineteen Pool participants for the purpose of operating a commodity pool to trade commodity futures contracts. (*Id.* at ¶ 4); *see also* (Consent Order, Doc. 6, at ¶ 23). From October 2008 through August 2012, Wright wired a total of $208,450 of these funds to a trading account. (*Id.* at ¶¶ 5-6). During the same time period, Wright withdrew $147,709 and suffered net trading losses approximating $60,700. (*Id.* at ¶ 6). Wright used the remaining funds to pay back Pool participants in the manner of a Ponzi scheme. (*Id.* at ¶ 7). Further, Wright used approximately $400,000 of the solicited funds to pay personal expenses. (*Id.*).

The details of the scheme are addressed in detail by the Consent Order. Beginning in August 2008, Wright solicited funds from friends and acquaintances by telling them the funds were loans for his painting business or that the funds would be used to purchase gas stations. (Doc. 6, at ¶ 18). He told some individuals that the funds would be used to trade commodities. (*Id.*). Some individuals were provided with a "Special Renewable Note Agreement" which specified that the participant would receive a specific repayment, which included a profit at a stated rate of interest. (*Id.* at ¶ 19). Wright told several participants that he was the managing partner of a commodity pool and the funds solicited would be traded by a firm called "Commodity Investment Group." (*Id.* at ¶ 20). In reality, Wright's account application was opened in his own name and in the application he stated that no other person would have an interest in the account. (*Id.* at ¶ 17). Wright provided some participants with Notes on "Commodity Investment Group" letterhead and

signed the materials as "Managing Partner"; however, "Commodity Investment Group" never received any of the funds and Wright was not the managing partner of any such firm. (*Id.* at ¶¶ 20,22). In fact, Wright had designed and printed these documents on his home computer. (*Id.* at ¶ 20). Despite these representations, Wright instructed participants to make their checks payable to him personally. (*Id.* at ¶ 21). Wright deposited these funds into his personal banking account, (*id.*), and the money was misapplied as stated above. Wright admits that his statements were false because (1) he knew he was not trading the vast majority of funds he received; (2) he knew that there was no firm called "Commodity Investment Group" to which he was transferring funds; (3) he knew that he could not meet the terms of the promissory notes through legitimate investments; and (4) he knew he was misappropriating the majority of funds he received to pay supposed returns to participants and to support his lifestyle. (*Id.* at ¶ 25).

The Consent Order establishes that Wright violated Section 4b(a)(1)(A) and (C) of the Act, 7 U.S.C. § 6b(a)(1)(A) (Supp. II 2009). (*Id.* at ¶¶ 30-31). The Consent Order also establishes that Wright violated Section 4*o*(1) of the Act, 7 U.S.C. § 6*o*(1) (2006) (*Id.* at ¶¶ 32-35). Further, it establishes that Wright violated Section 4m(1) of the Act, 7 U.S.C. § 6m(1), and violated Regulation 4.20(a)-(c), 17 C.F.R. § 4.20(a)-(c) (2012). (*Id.* at ¶¶ 36-38).

The CFTC may assess a person a civil penalty of an amount not more than equal to the greater of $140,000 or triple the monetary gain to such person for each such violation. 7 U.S.C. § 9(10)(C). This Court has jurisdiction to enter said civil penalty. 7 U.S.C. 13a-1(d)(1)(A).

"In evaluating civil penalties under the Act, courts have considered the general seriousness of the violation as well as any particular mitigating or aggravating circumstances that exist." *U.S. Commodity Futures Trading Comm'n v. Hall*, No. 1:11CV434, 2014 WL 4942312 (M.D.N.C. Sept. 30, 2014) (quoting *C.F.T.C. v. Gresham*, No. 3:09-CV-75, 2011 WL 8249266,

at *7 (N.D. Ga. Sept. 8, 2011)). "The [C]ourt may use such a fine as a deterrent of future violations, but the amount of the fine should be proportional to the gravity of the offenses committed." *U.S. Commodity Futures Trading Comm'n v. Hall*, No. 1:11CV434, 2014 WL 4942312 (M.D.N.C. Sept. 30, 2014) (quoting *C.F.T.C. v. Premium Income Corp.*, No. 3:05-CV-0416-B, 2007 WL 456369, at *7 (N.D. Tex. Dec. 28, 2007)).

The presence of knowing and repeated violations of the Act weighs in favor of a higher monetary penalty. *Commodity Futures Trading Comm'n v. Wilshire Inv. Mgmt. Corp.*, 531 F.3d 1339, 1346 (11th Cir. 2008). "Conduct that violates the core provisions of the Act, such as customer fraud, should be considered extremely serious." *U.S. Commodity Futures Trading Comm'n v. Smith*, No. 1:10CV00009, 2012 WL 1642200, at *14 (W.D. Va. Apr. 16, 2012) (citing *JCC, Inc. v. CFTC*, 63 F.3d 1557, 1571 (11th Cir.1995)). It is appropriate to consider the following factors in assessing a civil monetary penalty:

> the relationship of the violation at issue to the regulatory purposes of the Act and whether or not the violations involved core provisions of the Act; whether or not scienter was involved; the consequences flowing from the violative conduct; financial benefits to a defendant; and harm to customers or the market.

*U.S. Commodity Futures Trading Comm'n v. PMC Strategy, LLC*, No. 3:11CV73, 2013 WL 1349177, at *8 (W.D.N.C. Apr. 3, 2013) (citing *In re Grossfeld*, [1996–1998 Transfer Binder] Comm. Fut. L. Rep. (CCH) ¶ 26,921 at 44,467-8 (CFTC Dec. 10, 1996), *aff'd*, 137 F.3d 1300 (11th Cir.1998).

The Consent Order, the supporting affidavit, and the related memoranda all show that Wright has engaged in core violations of the Act: namely, customer fraud. Further, the Consent Order establishes that Wright knowingly or recklessly committed repeated violations of the Act. Wright perpetrated a scheme that involved a multitude of misrepresentations, which are addressed in depth above. Wright's conduct allowed him to unlawfully convert funds to his

4

personal use while maintaining the appearance of running a legitimate business. The Court finds that this conduct should be considered extremely serious. The Court finds an absence of mitigating factors. The repeated violations and the manner in which they have been committed have been considered by the Court. The Court finds that a civil monetary penalty in the amount of $1,000,000 is proportional to the gravity of the numerous offenses committed by Wright and will serve as a deterrent to others who may consider engaging in similar conduct. The Court also finds that a civil monetary penalty is within the parameters set forth in 7 U.S.C. § 9(10)(C).

**IT IS, THEREFORE, ORDERED THAT**

(1) CFTC's Motion for Entry of Civil Monetary Penalty (Doc. 7) is **GRANTED**; and

(2) The parties shall abide by the terms of the Supplemental Order entered contemporaneously with this memorandum.

Richard L. Voorhees
United States District Court Judge, Western District of North Carolina
June 11, 2015